(SSx), DISCOVERY, MANADR

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division − Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11−cv−08678−PA−SS

Sherry Herkal v. Boston Scientific Corporation et al
Assigned to: Judge Percy Anderson
Referred to: Magistrate Judge Suzanne H. Segal
Case in other court: Superior Court of CA Santa Barbara
          County, 1381852
Cause: 28:1441 Notice of Removal − Product Liability

Date Filed: 10/19/2011
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

| Date Filed | # | Docket Text |
|---|---|---|
| 10/19/2011 | 1 | NOTICE OF REMOVAL from the Superior Court of CA, Santa Barbara County, case number 1381852 with CONFORMED copies of summons and complaint (from Case 1372237). Case assigned to Judge Percy Anderson, discovery to Magistrate Judge Suzanne H Segal; (Filing fee $ 350 PAID ); filed by defendant Boston Scientific Corporation. (esa) Modified on 10/24/2011 (esa). (mg). (Entered: 10/24/2011) |
| 10/19/2011 | | SUPERIOR COURT CONFORMED COPY OF FIRST AMENDED COMPLAINT against defendant Boston Scientific Corporation (formerly Doe 5) amending Complaint (Case 1372237), 1 , filed by plaintiff Sherry Herkal (esa) (Entered: 10/24/2011) |
| 10/19/2011 | | SUPERIOR COURT CONFORMED COPY OF SECOND AMENDED COMPLAINT against defendants Boston Scientific Corporation (formerly Doe 5), Does amending First Amended Complaint (Case 1372237),filed by plaintiff Sherry Herkal (esa) Modified on 10/24/2011 (esa). (Entered: 10/24/2011) |
| 10/19/2011 | 2 | NOTICE OF INTERESTED PARTIES filed by defendant Boston Scientific Corporation. (esa) (mg). (Entered: 10/24/2011) |
| 10/19/2011 | 3 | DISCLOSURE STATEMENT filed by defendant Boston Scientific Corporation (esa) (mg). (Entered: 10/24/2011) |
| 10/19/2011 | 4 | NOTICE OF RELATED CASES filed by defendant Boston Scientific Corporation. Related Case(s): NONE (esa) (mg). (Entered: 10/24/2011) |
| 10/19/2011 | 5 | NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS filed by defendant Boston Scientific Corporation. (esa) (mg). (Entered: 10/24/2011) |
| 10/19/2011 | 6 | NOTICE TO PARTIES OF ADR PROGRAM filed. (esa) (Entered: 10/24/2011) |
| 10/24/2011 | 7 | CERTIFICATE OF SERVICE filed by defendant Boston Scientific Corporation, re Notice of Removal, 1 *Supporting Documentation* served on 10/20/2011. (Mosley, Natasha) (Entered: 10/24/2011) |
| 10/24/2011 | 8 | CERTIFICATE OF SERVICE filed by defendant Boston Scientific Corporation, re Notice of Removal, 1 *Notice to Adverse Party* served on 10/20/2011. (Mosley, Natasha) (Entered: 10/24/2011) |
| 10/24/2011 | 9 | CERTIFICATE OF SERVICE filed by defendant Boston Scientific Corporation, re Notice of Removal, 1 *Notice to Clerk* served on 10/20/2011. (Mosley, Natasha) (Entered: 10/24/2011) |
| 10/25/2011 | 10 | MINUTES OF IN CHAMBERS − COURT ORDER by Judge Percy Anderson: Before the Court is the Notice of Removal filed by defendant Boston Scientific Corporation. To determine the sufficiency of the Notice of Removal, the Court orders plaintiffs to file a statement setting forth the date of service for each defendant that has been served, as well as a copy of the corresponding proof of service. Plaintiffs' response shall also state if any defendant has not yet been served. Plaintiffs' response shall be filed by 11/7/2011. Court Reporter: N/A. (gk) |

| | | |
|---|---|---|
| | | (Entered: 10/26/2011) |
| 11/07/2011 | 11 | RESPONSE filed by Plaintiff Sherry Herkal *RESPONSE TO COURTS REQUEST OF PLAINTIFF TO FILE A STATEMENT SETTING FORTH DATE OF SERVICE OF DEFENDANT* (Kent, Amanda) (Entered: 11/07/2011) |
| 11/22/2011 | 12 | STIPULATION Extending Time to Answer the complaint as to Boston Scientific Corporation answer now due 12/28/2011, re Amended Complaint filed by defendant Boston Scientific Corporation. (Attachments: # 1 Proposed Order to Extend Time to Respond to Second Amended Complaint)(Mosley, Natasha) (Entered: 11/22/2011) |
| 11/22/2011 | 13 | PROOF OF SERVICE filed by defendant Boston Scientific Corporation, re Stipulation Extending Time to Answer (30 days or less), Stipulation Extending Time to Answer (30 days or less) 12 served on 11/22/2011. (Mosley, Natasha) (Entered: 11/22/2011) |

GIRARDI | KEESE
THOMAS V. GIRARDI – BAR NO. 36603
AMY FISCH SOLOMON – BAR NO. 140333
AMANDA KENT– BAR NO. 258298
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211
Attorneys For Plaintiffs

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

OCT 2 0 2010

GARY M. BLAIR, Executive Officer
BY _____
JOSEPH GARNICA, Deputy Clerk

*VIA FAX*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SANTA BARBARA

SHERRY HERKAL, an individual, CANDY WARD, an individual, LEORA PORTER, an individual, and NANCY WEBB, an individual )

Plaintiffs,

vs.

MENTOR CORPORATION, a California corporation, and DOE MANUFACTURERS one through one hundred.

Defendants.

CASE NO.     1372227

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1. Strict Products Liability- Failure to Warn
2. Strict Liability
3. Negligence
4. Breach of Implied Warranty
5. Breach of Express Warranty
6. Fraud
7. Fraud by Concealment
8. Negligent Misrepresentation
9. Violation of State Consumer Fraud & Deceptive Trade Practices Act

COME NOW, plaintiffs complaining of defendants as follows:

### PARTIES, JURISDICTION AND VENUE

-1-

COMPLAINT FOR DAMAGES

1.    SHERRY HERKAL. is and was at all times alleged herein, a citizen and resident of Yuba City, California. CANDY WARD, is and was at all times alleged herein, a citizen and resident of Milton, Florida. LEORA PORTER, is and was at all times alleged herein, a citizen and resident of Noblesville, Indiana. NANCY WEBB is and was at all times alleged herein, a citizen and resident of Cleveland. Missouri.

2.    Defendant Mentor Corporation (hereinafter, "MENTOR") is and was a corporation formed under the laws of the State of California, with its principal place of business in California at 201 Mentor Drive, Santa Barbara. California 93111.

3.    At all times alleged herein, MENTOR included and includes any and all parents, subsidiaries, affiliates, divisions, franchises. partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf

4.    At all times alleged herein, MENTOR conducted regular and sustained business in California by selling and distributing its products in California, as described below.

5.    Upon information and belief, Defendants DOE Manufacturers One through One Hundred are manufacturers, persons, agents, servants, employees, corporations, partnership or other business entities whose true names are unknown by Plaintiff at the present time. Plaintiffs allege, upon information and belief, that DOE Manufacturers ONE through One Hundred are citizens and residents of the State of California, or are domiciled within the State of California, or conduct regular and sustained business within the State of California, to subject them to the jurisdiction of this Court. Each of these Defendants negligently assisted the named Defendants in carrying out the allegations as set forth below. Alternatively, DOE Manufacturers One through One Hundred were agents and/or servants of one or more named defendants, were acting within the course and scope of their employment and/or agency at the times alleged herein. If and when the true identities of such persons, servants, employees, corporations, partnership or other business entities are known to Plaintiff, they will seek leave of Court to amend the Complaint to reflect such true names, together with appropriate charging allegations.

6. At all times alleged herein, reference to any named Defendant, or use of the collective term "Defendants", includes the named Defendant and Defendants DOE Manufacturers ONE through one hundred, or all named Defendants herein and Defendants DOE Manufacturers ONE through one hundred, respectively.

7. At all times alleged herein, Defendants identified herein as, or discovered to be, corporations or other business entities were acting by and through officers, employees, agents, and contractors, who were acting within the course and scope of said office, employment, agency, or contractual authority.

## FACTUAL BACKGROUND

8. Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell products that are sold to and marketed to treat, among other things, pelvic organ prolapse and stress urinary incontinence.

10. MENTOR designed, researched, developed, manufactured, tested, marketed, advertised, promoted, distributed, and sold mesh products, the implanted synthetic surgical mesh devices purported to correct and restore normal vaginal structure secondary to pelvic organ prolapse.

11. The MENTOR mesh products are collectively referred to herein as the "Mesh Devices."

12. Upon information and belief, MENTOR sought and obtained Food and Drug Administration ("FDA") approval to market mess products and/or its monofilament polypropylene mesh component under Section 510(k) of the Medical Device Amendment.

13. Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices without formal review for safety or efficacy.

14. On or about January, 2007, Plaintiff SHERRY HERKAL underwent transvaginal tape, bladder sling, urethral suspension, and cystocele repair. On or about November, 2006, Plaintiff CANDY WARD underwent transvaginal tape, bladder sling, urethral suspension, and cystocele repair. On or about October, 2004, Plaintiff LEORA PORTER underwent transvaginal tape, bladder sling, urethral suspension, and cystocele repair. On or about March, 2007, Plaintiff NANCY WEBB underwent transvaginal tape, bladder sling, urethral suspension, and cystocele repair. Since implantation of the Mesh Devices, Plaintiffs have suffered from, among other problems, erosion, shrinkage, and extrusion of mesh from one or more of the

COMPLAINT FOR DAMAGES

1   Mesh Devices, causing urinary retention, severe persistent pain, including dyspareunia, and numerous
2   surgical procedures to remove the Mesh Devices.

3       15.   At all times relevant herein, the Mesh Devices were widely advertised and promoted by Defendants
4   as a safe and effective treatment for pelvic organ prolapse, rectocele, enterocele and stress urinary
5   incontinence.  Said Defendants, and each of them, minimized the risks posed to patients with implantation
6   of the Mesh Devices.

7       16.   At all times relevant herein, Defendants knew their Mesh Devices were defective and knew the
8   defect was attributable to the erosion, hardening and shrinkage of the mesh material.   The Defendants, and
9   each of them, knew that the Mesh Devices were made to allow tissue infiltration and that removal is not
10  advised.  Complications from the mesh and from mesh removal are life-changing and can be irreversible.
11  This information was known to the Defendants, and each of them, prior to implantation of the Mesh Devices
12  in Plaintiffs.

13      17.   At all times relevant to this action, the Defendants, and each of them, knew that synthetic mesh
14  systems, and specifically the Mesh Devices, were not safe for the patients for whom they were prescribed
15  and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a
16  safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body
17  invasion, dense adhesions, and worsening dyspareunia.  Removal of eroded or infected mesh brings a high
18  rate of life-threatening complications including permanent disfigurement and hemorrhage.  Complete
19  removal can take multiple surgical interventions in the operating theater and results in scarring on fragile
20  compromised pelvic tissue and muscles.

21      18.   The Defendants' representations regarding the performance of the Mesh Devices, including, but not
22  limited to, the consistency of the performance of the Mesh Devices and their safety and reliability, were
23  untrue as set forth in the published literature and adverse event reports.  The Defendants, and each of them,
24  failed to disclose to physicians, patients or Plaintiff that their Mesh Devices were subject to erosion or scar
25  tissue formation causing the injuries herein described.

26      19.   At all relevant times herein, Defendants, and each of them, continued to promote the Mesh Devices
27  as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

28

COMPLAINT FOR DAMAGES

20. In doing so the Defendants, and each of them, concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Mesh Devices for pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence.

21. As a result of the defective Mesh Devices, Plaintiffs have suffered severe physical and emotional injuries, including and but limited to, multiple surgical procedures, painful scarring and worsening and continuing dyspareunia.

22. At all relevant times herein, Defendants, and each of them, failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Mesh Devices including, but not limited to, mesh erosion, dense adhesion, worsening dyspareunia, chronic pain, inflection, sepsis, permanent disfigurement and multiple surgeries for mesh removal.

23. The Mesh Devices are designed, manufactured, distributed sold and/or supplied by the Defendants, and each of them, was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants'' knowledge of product failure and serious adverse events.

24. At all times herein mentioned, the officers and/or directors of the Defendants named herein participated in , authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff.

25. Due to the acts of all Defendants individually or in concert, the information regarding the nature and/or the facts leading up to and/or causing the injuries alleged herein was not known by Plaintiffs nor reasonably could have been known prior to October 20, 2008, when the FDA released a public health notification of the serious complications associated with transvaginal placement of surgical mesh devices, for treatment of, *inter alia*, pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

## FIRST CAUSE OF ACTION

### [ Strict Products Liability – Failure to Warn]

26. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

-5-

27. At all times mentioned herein, the Mesh Devices are, and were, dangerous and presented a substantial danger to patients who were implanted with the Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiffs. Ordinary consumer would not have recognized the potential risks and dangers the Mesh Devices posed to pelvic reconstruction patients because their uses were specifically promoted to improve the health of such patients. The Mesh Devices were used in a way reasonably foreseeable to the Defendants, and each of them, by Plaintiffs. The Defendants, and each of them, failed to provide warning of such risks and dangers to Plaintiffs and their medical providers as described herein.

28. At all times mentioned herein, the Mesh Devices are, and were, dangerous and presented a substantial danger to patients who were implanted with the Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiffs. Ordinary consumers would not have recognized the potential risks and dangers the Mesh Devices posed to pelvic reconstruction patients because their uses were specifically promoted to improve the health of such patients. The Mesh Devices were used in a way reasonably foreseeable to the Defendants, and each of them, by Plaintiffs. The Defendants, and each of the, failed to provide warning of such risks and dangers to Plaintiffs and their medical providers as described herein.

29. As a result of the Mesh Devices, Plaintiffs suffered debilitating injuries from the synthetic mesh including mesh erosion, shrinking, hardening, chronic pain and worsening dyspareunia leading to the need for dangerous and serious vaginal surgery; required and will continue to require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, chronic debilitating pain, and other such damages.

30. In doing the acts herein described, the Defendants, and each of them, acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter the Defendants, and each of them, and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

### [Strict Liability]

31. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation continued in the preceding paragraphs.

32. The Mesh Devices were manufactured and/or supplied by the Defendants, and each of them, and were placed into the stream of commerce by these Defendants, and each of them, in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with their design of formulation.

33. Alternatively, the Mesh Devices manufactured and/or supplied by the Defendants, and each of them, were defective in design or formulation, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions in that when they were placed into the stream of commerce, they were unreasonably dangerous; they were more dangerous than an ordinary consumer would expect and more dangerous than other forms of pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence repair/correction. As a result of the defective unreasonably dangerous condition of the Mesh Devices manufactured and/or supplied by the Defendants, and each of them, Plaintiffs were caused to suffer the herein described injuries and damages.

34. Defendants, and each of them, acted with conscious and deliberate disregard of the foreseeable harm caused by the Mesh Devices.

35. The Defendants, and each of them, thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiffs' and the general public's safety, who accordingly request that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants, and each of them, for their conduct, in an amount sufficiently large to be an example to others and to deter the Defendants, and each of them, and others from engaging gin similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agents of the Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## THIRD CAUSE OF ACTION

### [ Negligence ]

36. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

37. The Defendants, and each of them, and their representatives were manufacturers and/or distributors of the Mesh Devices. At all times herein, the Defendants, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid products.

38. The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the aforesaid products, that there were dangerous and unsafe for the use and purpose for which they were intended, that is, repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, in Plaintiffs and others similarly situated. As a result of the carelessness and negligence of the Defendants, Plaintiffs have the Mesh Devices implanted in the manner intended by the manufacturer, and, as a result, Plaintiffs suffered the injuries and damages described herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### [ Breach of Implied Warranty ]

39. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

40. The Defendants, and each of them, impliedly warranted that their Mesh Devices, which the Defendants, and each of them, designed, manufactured, assembled, promoted and sold to Plaintiffs, were merchantable and fit and safe for ordinary use. The Defendants, and each of them, further impliedly

-8-

1   warranted that their Mesh Devices were fit for the particular purpose of repairing/correcting pelvic organ

2   prolapse, rectocele, enterocele and stress urinary incontinence, respectively.

3       41.   The Defendants' Mesh Devices were defective, unmerchantable, and unfit for ordinary use when

4   sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiffs to severe and

5   permanent injuries. Therefore, the Defendants, and each of them, breached the implied warranties of

6   merchantability and fitness for a particular purpose when their synthetic mesh systems were sold to

7   Plaintiffs, in that the Mesh Devices are defective and have failed to function as represented and intended.

8       42.   As a result of the Defendants', and each of them, breach of the implied warranties of

9   merchantability and fitness for a particular purpose, Plaintiffs have sustained and will continue to sustain the

10  injuries and damages described herein and is, therefore, entitled to compensatory damages.

11      43.   After Plaintiffs were made aware that their injuries were as a result of the Mesh Devices, said

12  Defendants, and each of them, had ample and sufficient notice of the breach of said warranty.

13      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

14                          **FIFTH CAUSE OF ACTON**

15                          [ Breach of Express Warranty ]

16      44.   Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation

17  contained in the preceding paragraphs.

18      45.   The Defendants and each of them, expressly warranted to Plaintiff and/or her authorized agents or

19  sales representatives, in publications, and other communications intended for medical patients, and the

20  general public, that the Mesh Devices were safe, effective, fit and proper for their intended use.

21      46.   Plaintiffs and their physicians reasonably relied upon the skill and judgment of the Defendants, and

22  upon said express warranty, in using the aforesaid Mesh Devices. The warranty and representations were

23  untrue in that the products caused severe injury to Plaintiffs and were unsafe and, therefore, unsuited for the

24  use in which they were intended and caused Plaintiffs to sustain damages and injuries herein alleged.

25      47.   As soon as the true names of the Mesh Devices, and the fact that the warranty and representations

26  were false, were ascertained, said Defendants, and each of the, had ample and sufficient notice of the breach

27  of said warranty.

28      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### [ FRAUD]

48.   Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

49.   The Defendants, and each of them, falsely and fraudulently represented to Plaintiffs, their physicians, and to members of the general public tha the aforesaid products were safe, effective, reliable, consistent, and beter than the other similar pelvic repair procedures when used in the manner intended by the manufacturer.   The representations by said Defendants, and each of them, were in fact, false.   The true facts include, but are not limited to, that the aforesaid products were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiffs.

50.   When the Defendants, and each of them, made these representations, they were that they were false. The Defendants, and each of them, made said representations with the intent to defraud and deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner herein alleged, that is to use the aforementioned products for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence.

51.   In doing the acts herein alleged, the Defendants, and each of them, acted with oppression, fraud, and malice, and Plaintiffs are, therefore, entitled to punitive damages to deter the Defendants, and each of them, and others form engaging in similar conduct in the future.   Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director, and/or managing agent of Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### [ Fraud by Concealment ]

52.   Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

-10-

COMPLAINT FOR DAMAGES

53. At all times mentioned herein, the Defendants, and each of them, had the duty and obligation to disclose to Plaintiffs and to her physicians, the true facts concerning the Mesh Devices; that is, that said products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal use, and how likely there were to cause serious consequences to users including permanent and debilitating injuries. The Defendants, and each of them, made the affirmative representations as set forth above to Plaintiffs, their physicians, and the general public prior to the date the Mesh Devices were implanted in Plaintiffs, while concealing material facts.

54. At all times herein mentioned, the Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians with the intent to defraud.

55. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representation of safety and efficacy and utilized the Mesh Devices for repairing/correcting pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

56. As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as hereinafter set forth.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

[ Negligent Misrepresentation ]

57. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the pending paragraphs.

58. At all relevant times herein, the Defendants, and each of them, represented to Plaintiffs and their physicians that the Mesh Devices were safe to use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, knowing that the Mesh Devices were defective and capable of causing the injuries described herein.

59. The Defendants, and each of them, made the aforesaid representations with no reasonable ground for believing them to be true when the data readily available to Defendants, and upon information and belief directly available to Defendants in the form of adverse even reports specifically related to the Mesh Devices showed the Mesh Devices to be defective and dangerous when used in the intended manner.

-11-

COMPLAINT FOR DAMAGES

60. The aforesaid representation were made to the physicians prescribing the Mesh Devices prior to the date they were prescribed to Plaintiffs with the intent that Plaintiffs and their physicians rely upon such misrepresentations about the safety and efficacy of the Mesh Devices. Plaintiffs and their physicians did reasonably rely upon such representations that the aforesaid product was safe for use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stree urinary incontinence.

61. The representations by the Defendants, and each of them, to Plaintiffs were false and thereby caused Plaintiffs' injuries described herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## NINTH CAUSE OF ACTION

### [ Violation of State Consumer Fraud & Deceptive Trade Practices Act ]

62. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the pending paragraphs.

63. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of the Mesh Devices to Plaintiffs.

64. Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading act or practices in violation of all California and Colorado consumer protection laws, identified below. Through its false, untrue and misleading promotions of the Mesh Devices and/or local anesthetic products, Defendants induced Plaintiffs to purchase and/or pay for the purchase of the Mesh Devices. Defendants misrepresented the alleged benefits and characteristics of said products; suppressed, concealed, and failed to disclose material information concerning known adverse effects; misrepresented the quality as compared to much lower-cost alternatives; misrepresented and advertised that they were of a particular standard quality or grad that they were not; misrepresented in such a matter that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have switched to another product and/or chosen not to purchase and/or reimburse for purchase for the product; advertised with the intent not to sell as advertised; and otherwise engaged in fraudulent and deceptive conduct.

65. As such a matter that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have switched to another product and/or chosen not to purchase and/or reimburse for purchase for the

1    product; advertised with the intent not to sell as advertised; and otherwise engaged in fraudulent and

2    deceptive conduct.

3       66.  Moreover, Defendants knowingly took advantage of Plaintiffs who were reasonably unable to

4    protect their interest due to ignorance of the harmful adverse effects. Defendants' conduct was willful,

5    outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to

6    Plaintiffs and offends the public conscience.

7       67.  As a result of and in reliance of Defendants' violative conduct, Plaintiffs purchased and/or paid for

8    purchases of the Mesh Devices that were not made for resale.

9       68.  As such, Defendants engaged in unfair competition or deceptive acts or practices in violation of

10   California Business & Professional Code §17200, *et seq.*, California Business & Professional Code §17500,

11   *et seq.*, and C.R.S. 6-1-105, *et seq.*, among a proximate result of Defendants' misrepresentations and

12   omissions, Plaintiffs have suffered ascertainable losses, in an amount to be determined at trial.

13      69.  As a direct and proximate consequence of Defendants' acts, omissions and misrepresentations

14   described herein, the Plaintiffs have required and will require healthcare and services; have incurred and will

15   continue to incur medical and related expenses; have suffered  loss of wages and a diminished capacity to

16   earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the

17   enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages.

18   Plaintiffs' direct medical losses and costs include care of hospitalization, physician car, monitoring,

19   treatment, medications, and supplies.  Plaintiffs will continue to incur such losses in the future.

20      70.  Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate

21   disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby

22   entitling Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter them from

23   similar conduct in the future.

24      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth, seeking

25   compensatory damages, the imposition of a constructive trust over and restitution of the monies collected

26   and profits realized by the Defendants to cease such false and misleading advertising in the future, and

27   punitive and exemplary damages together with interest, the costs of suit and attorneys' fees and such other

28   and further relief as this court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

a. Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

b. For lost wages and loss of earning capacity in an amount to be proven at time of trial together with interest thereon at the highest lawful rate from the date of judgment until paid in full;

c. For imposition of a constructive trust and restitution;

d. For punitive or exemplary and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

e. For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial'

f. For Plaintiffs' reasonable attorneys' fees;

g. For Plaintiffs' costs incurred herein together with interest thereon at the highest lawful rate from the date of judgment until paid in full; and

h. For such other relief as the Court deems just and proper.

Dated: October 19, 2010

Girardi & Keese

By: _____

Thomas V. Girardi
Amy Fisch Solomon
Amanda Kent

-14-

COMPLAINT FOR DAMAGES

**GIRARDI | KEESE**
THOMAS V. GIRARDI – BAR NO. 36603
AMY FISCH SOLOMON – BAR NO. 140333
AMANDA KENT- BAR NO. 258298
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211
Attorneys For Plaintiffs

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

MAR 15 2011

GARY M. BLAIR. Executive Officer

BY _Menice A. Jay, Deputy Clerk_

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SANTA BARBARA

SHERRY HERKAL, an individual, CANDY WARD, an individual, and LEORA PORTER, an individual,

        Plaintiffs,

vs.

MENTOR CORPORATION, a California corporation, and DOE MANUFACTURERS one through one hundred.

        Defendants.

CASE NO. 1372237

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1. Strict Products Liability- Failure to Warn
2. Strict Liability
3. Negligence
4. Breach of Implied Warranty
5. Breach of Express Warranty
6. Fraud
7. Fraud by Concealment
8. Negligent Misrepresentation
9. Violation of State Consumer Fraud & Deceptive Trade Practices Act

**BY "FAX"**

COME NOW, plaintiffs complaining of defendants as follows:

## PARTIES, JURISDICTION AND VENUE

-1-

FIRST AMENDED COMPLAINT FOR DAMAGES

3/15

1. SHERRY HERKAL, is and was at all times alleged herein, a citizen and resident of Yuba City, California. CANDY WARD, is and was at all times alleged herein, a citizen and resident of Milton, Florida. LEORA PORTER, is and was at all times alleged herein, a citizen and resident of Noblesville, Indiana.

2. Defendant Mentor Corporation (hereinafter, "MENTOR") is and was a corporation formed under the laws of the State of California, with its principal place of business in California at 201 Mentor Drive, Santa Barbara, California 93111.

3. At all times alleged herein, MENTOR included and includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

4. At all times alleged herein, MENTOR conducted regular and sustained business in California by selling and distributing its products in California, as described below.

5. Upon information and belief, Defendants DOE Manufacturers One through One Hundred are manufacturers, persons, agents, servants, employees, corporations, partnership or other business entities whose true names are unknown by Plaintiff at the present time. Plaintiffs allege, upon information and belief, that DOE Manufacturers ONE through One Hundred are citizens and residents of the State of California, or are domiciled within the State of California, or conduct regular and sustained business within the State of California, to subject them to the jurisdiction of this Court. Each of these Defendants negligently assisted the named Defendants in carrying out the allegations as set forth below. Alternatively, DOE Manufacturers One through One Hundred were agents and/or servants of one or more named defendants, were acting within the course and scope of their employment and/or agency at the times alleged herein. If and when the true identities of such persons, servants, employees, corporations, partnership or other business entities are known to Plaintiff, they will seek leave of Court to amend the Complaint to reflect such true names, together with appropriate charging allegations.

6. At all times alleged herein, reference to any named Defendant, or use of the collective term "Defendants", includes the named Defendant and Defendants DOE Manufacturers ONE through one

-2-

1   hundred, or all named Defendants herein and Defendants DOE Manufacturers ONE through one hundred,

2   respectively.

3      7.   At all times alleged herein, Defendants identified herein as, or discovered to be, corporations or other

4   business entities were acting by and through officers, employees, agents, and contractors, who were acting

5   within the course and scope of said office, employment, agency, or contractual authority.

6   **FACTUAL BACKGROUND**

7   8.  Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell

8   products that are sold to and marketed to treat, among other things, pelvic organ prolapse and stress urinary

9   incontinence.

10     10.  MENTOR designed, researched, developed, manufactured, tested, marketed, advertised, promoted,

11         distributed, and sold mesh products, the implanted synthetic surgical mesh devices purported to

12         correct and restore normal vaginal structure secondary to pelvic organ prolapse.

13     11.  The MENTOR mesh products are collectively referred to herein as the "Mesh Devices."

14     12.  Upon information and belief, MENTOR sought and obtained Food and Drug Administration

15   ("FDA") approval to market mess products and/or its monofilament polypropylene mesh component under

16   Section 510(k) of the Medical Device Amendment.

17     13.  Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent

18   to other legally marketed predicate devices without formal review for safety or efficacy.

19     14.  On or about January, 2007, Plaintiff SHERRY HERKAL underwent transvaginal tape, bladder

20   sling, urethral suspension, and cystocele repair.  On or about November, 2006, Plaintiff CANDY WARD

21   underwent transvaginal tape, bladder sling, urethral suspension, and cystocele repair. On or about October,

22   2004, Plaintiff LEORA PORTER underwent transvaginal tape, bladder sling, urethral suspension, and

23   cystocele repair.  Since implantation of the Mesh Devices, Plaintiffs have suffered from, among other

24   problems, erosion, shrinkage, and extrusion of mesh from one or more of the Mesh Devices, causing urinary

25   retention, severe persistent pain, including dyspareunia, and numerous surgical procedures to remove the

26   Mesh Devices.

27     15.  At all times relevant herein, the Mesh Devices were widely advertised and promoted by Defendants

28   as a safe and effective treatment for pelvic organ prolapse, rectocele, enterocele and stress urinary

incontinence. Said Defendants, and each of them, minimized the risks posed to patients with implantation of the Mesh Devices.

16.   At all times relevant herein, Defendants knew their Mesh Devices were defective and knew the defect was attributable to the erosion, hardening and shrinkage of the mesh material.  The Defendants, and each of them, knew that the Mesh Devices were made to allow tissue infiltration and that removal is not advised.  Complications from the mesh and from mesh removal are life-changing and can be irreversible. This information was known to the Defendants, and each of them, prior to implantation of the Mesh Devices in Plaintiffs.

17.   At all times relevant to this action, the Defendants, and each of them, knew that synthetic mesh systems, and specifically the Mesh Devices, were not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions, and worsening dyspareunia.  Removal of eroded or infected mesh brings a high rate of life-threatening complications including permanent disfigurement and hemorrhage.  Complete removal can take multiple surgical interventions in the operating theater and results in scarring on fragile compromised pelvic tissue and muscles.

18.   The Defendants' representations regarding the performance of the Mesh Devices, including, but not limited to, the consistency of the performance of the Mesh Devices and their safety and reliability, were untrue as set forth in the published literature and adverse event reports.  The Defendants, and each of them, failed to disclose to physicians, patients or Plaintiff that their Mesh Devices were subject to erosion or scar tissue formation causing the injuries herein described.

19.   At all relevant times herein, Defendants, and each of them, continued to promote the Mesh Devices as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

20.   In doing so the Defendants, and each of them, concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Mesh Devices for pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence.

FIRST AMENDED COMPLAINT FOR DAMAGES

21. As a result of the defective Mesh Devices, Plaintiffs have suffered severe physical and emotional injuries, including and but limited to, multiple surgical procedures, painful scarring and worsening and continuing dyspareunia.

22. At all relevant times herein, Defendants, and each of them, failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Mesh Devices including, but not limited to, mesh erosion, dense adhesion, worsening dyspareunia, chronic pain, inflection, sepsis, permanent disfigurement and multiple surgeries for mesh removal.

23. The Mesh Devices are designed, manufactured, distributed sold and/or supplied by the Defendants, and each of them, was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants'' knowledge of product failure and serious adverse events.

24. At all times herein mentioned, the officers and/or directors of the Defendants named herein participated in , authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff.

25. Due to the acts of all Defendants individually or in concert, the information regarding the nature and/or the facts leading up to and/or causing the injuries alleged herein was not known by Plaintiffs nor reasonably could have been known prior to October 20, 2008, when the FDA released a public health notification of the serious complications associated with transvaginal placement of surgical mesh devices, for treatment of, *inter alia*, pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

## FIRST CAUSE OF ACTION

### [ Strict Products Liability – Failure to Warn]

26. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

27. At all times mentioned herein, the Mesh Devices are, and were, dangerous and presented a substantial danger to patients who were implanted with the Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiffs. Ordinary consumer would not have recognized the potential risks and dangers the Mesh Devices posed to pelvic reconstruction patients

1   because their uses were specifically promoted to improve the health of such patients. The Mesh Devices

2   were used in a way reasonably foreseeable to the Defendants, and each of them, by Plaintiffs. The

3   Defendants, and each of them, failed to provide warning of such risks and dangers to Plaintiffs and their

4   medical providers as described herein.

5       28. At all times mentioned herein, the Mesh Devices are, and were, dangerous and presented a

6   substantial danger to patients who were implanted with the Mesh Devices, and these risks and dangers were

7   known or knowable at the time of distribution and implantation in Plaintiffs. Ordinary consumers would not

8   have recognized the potential risks and dangers the Mesh Devices posed to pelvic reconstruction patients

9   because their uses were specifically promoted to improve the health of such patients. The Mesh Devices

10   were used in a way reasonably foreseeable to the Defendants, and each of them, by Plaintiffs. The

11   Defendants, and each of the, failed to provide warning of such risks and dangers to Plaintiffs and their

12   medical providers as described herein.

13       29. As a result of the Mesh Devices, Plaintiffs suffered debilitating injuries from the synthetic mesh

14   including mesh erosion, shrinking, hardening, chronic pain and worsening dyspareunia leading to the need

15   for dangerous and serious vaginal surgery; required and will continue to require healthcare and services; has

16   incurred and will continue to incur medical and related expenses; has suffered and will continue to suffer

17   mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, chronic

18   debilitating pain, and other such damages.

19       30. In doing the acts herein described, the Defendants, and each of them, acted with oppression, fraud

20   and malice, and Plaintiffs are therefore entitled to punitive damages to deter the Defendants, and each of

21   them, and others from engaging in similar conduct in the future. Said wrongful conduct was done with

22   advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the

23   Defendants.

24       WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

25

26

27

28                                **SECOND CAUSE OF ACTION**

[Strict Liability]

31. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation continued in the preceding paragraphs.

32. The Mesh Devices were manufactured and/or supplied by the Defendants, and each of them, and were placed into the stream of commerce by these Defendants, and each of them, in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with their design of formulation.

33. Alternatively, the Mesh Devices manufactured and/or supplied by the Defendants, and each of them, were defective in design or formulation, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions in that when they were placed into the stream of commerce, they were unreasonably dangerous; they were more dangerous than an ordinary consumer would expect and more dangerous than other forms of pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence repair/correction. As a result of the defective unreasonably dangerous condition of the Mesh Devices manufactured and/or supplied by the Defendants, and each of them, Plaintiffs were caused to suffer the herein described injuries and damages.

34. At the time of the plaintiffs' surgery the Mesh Device was being used for the purpose for which it was intended and the way it was intended to be used. After being implanted with the Mesh Device, Plaintiffs used the Mesh Device in a manner for which it was reasonably foreseeable that it would be used. Defendants knew that patients, including plaintiffs, would be subjected to the Mesh Device, its component parts and its labeling and instructions without being able to inspect them or become aware of their defective nature. Plaintiffs did not know and had no reason to suspect or know that the Mesh Device, its component parts or its labeling and instructions were defective and unsafe for use.

35. The Mesh Device, its component parts, its labeling and its instructions were defective at the time of its design, manufacture, testing, production, inspection, sale and distribution, including lack of warnings or adequate consumer information at the time it was placed in the stream of commerce. The product's instructions and directions for implantation failed to warn of the dangerous propensities of the said product, which risks were known or reasonably scientifically knowable to defendants. The defendants, and each of them, knew or should have known of the defective condition, characteristics and risks associated with said

FIRST AMENDED COMPLAINT FOR DAMAGES

1  product, as previously set forth herein.

2     36. Defendants, and each of them, acted with conscious and deliberate disregard of the foreseeable

3  harm caused by the Mesh Devices.

4     37. The Defendants, and each of them, thereby acted with fraud, malice, oppression and a conscious

5  disregard for the Plaintiffs' and the general public's safety, who accordingly request that the trier of fact, in

6  the exercise of sound discretion, award additional damages for the sake of example and for the purpose of

7  punishing the Defendants, and each of them, for their conduct, in am amount sufficiently large to be an

8  example to others and to deter the Defendants, and each of them, and others from engaging gin similar

9  conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization,

10 and/or ratification of an officer, director, and/or managing agents of the Defendants.

11    WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

12

13

14

15 **THIRD CAUSE OF ACTION**

16 [ Negligence ]

17 38. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation

18    contained in the preceding paragraphs.

19 39. The Defendants, and each of them, and their representatives were manufacturers and/or distributors

20    of the Mesh Devices. At all times herein, the Defendants, and each of them, had a duty to properly

21    manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply,

22    provide proper warnings and prepare for use and sell the aforesaid products.

23 40. The Defendants, and each of them, so negligently and carelessly manufactured, compounded,

24    tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended,

25    displayed, sold, examined, failed to examine and supplied the aforesaid products, that there were

26    dangerous and unsafe for the use and purpose for which they were intended, that is,

27    repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, in

28    Plaintiffs and others similarly situated. As a result of the carelessness and negligence of the

Defendants, Plaintiffs have the Mesh Devices implanted in the manner intended by the manufacturer, and, as a result, Plaintiffs suffered the injuries and damages described herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### [ Breach of Implied Warranty ]

41. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

42. The Defendants, and each of them, impliedly warranted that their Mesh Devices, which the Defendants, and each of them, designed, manufactured, assembled, promoted and sold to Plaintiffs, were merchantable and fit and safe for ordinary use. The Defendants, and each of them, further impliedly warranted that their Mesh Devices were fit for the particular purpose of repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, respectively.

43. The Defendants' Mesh Devices were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiffs to severe and permanent injuries. Therefore, the Defendants, and each of them, breached the implied warranties of merchantability and fitness for a particular purpose when their synthetic mesh systems were sold to Plaintiffs, in that the Mesh Devices are defective and have failed to function as represented and intended.

44. As a result of the Defendants', and each of them, breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiffs have sustained and will continue to sustain the injuries and damages described herein and is, therefore, entitled to compensatory damages.

45. After Plaintiffs were made aware that their injuries were as a result of the Mesh Devices, said Defendants, and each of them, had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTON

### [ Breach of Express Warranty ]

46. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

-9-

47. The Defendants and each of them, expressly warranted to Plaintiff and/or her authorized agents or sales representatives, in publications, and other communications intended for medical patients, and the general public, that the Mesh Devices were safe, effective, fit and proper for their intended use.

48. Plaintiffs and their physicians reasonably relied upon the skill and judgment of the Defendants, and upon said express warranty, in using the aforesaid Mesh Devices. The warranty and representations were untrue in that the products caused severe injury to Plaintiffs and were unsafe and, therefore, unsuited for the use in which they were intended and caused Plaintiffs to sustain damages and injuries herein alleged.

49. As soon as the true names of the Mesh Devices, and the fact that the warranty and representations were false, were ascertained, said Defendants, and each of the, had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### SIXTH CAUSE OF ACTION

### [ FRAUD]

50. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

51. The Defendants, and each of them, falsely and fraudulently represented to Plaintiffs, their physicians, and to members of the general public that the aforesaid products were safe, effective, reliable, consistent, and better than the other similar pelvic repair procedures when used in the manner intended by the manufacturer. The representations by said Defendants' employees who, upon information and belief, include but are not limited to, Defendants' sales representatives, and marketing representatives, were in fact, false. The true facts include, but are not limited to, that the aforesaid products were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiffs.

52. When the Defendants, and each of them, made these representations, they were aware that they were false. The Defendants, and each of them, made said representations with the intent to defraud and deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner herein alleged, that is to use

1   the aforementioned products for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress

2   urinary incontinence.

3       53. While affirmatively misrepresenting the Mesh Devices' safety, Defendants failed to disclose to

4   Plaintiffs or her health care providers the material information that the Mesh Devices were not safe to be

5   used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence,

6   and were, in fact, dangerous to the health and body of Plaintiffs.

7       54. Defendants either knew that their representations and omissions to Plaintiffs and their healthcare

8   providers were false, or made such representations with a reckless regard for their truth or falsity.

9       55. Defendants intended that Plaintiffs and their healthcare providers would rely upon the Company's

10  representations and omissions concerning the safety and effectiveness of the Mesh Devices, and plaintiffs

11  justifiably relied upon Defendants' misrepresentations.

12      56. In doing the acts herein alleged, the Defendants, and each of them, acted with oppression, fraud,

13  and malice, and Plaintiffs are, therefore, entitled to punitive damages to deter the Defendants, and each of

14  them, and others form engaging in similar conduct in the future. Said wrongful conduct was done with

15  advance knowledge, authorization and/or ratification of an officer, director, and/or managing agent of

16  Defendants.

17      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

18                          **SEVENTH CAUSE OF ACTION**

19                          **[ Fraud by Concealment ]**

20      57. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation

21  contained in the preceding paragraphs.

22      58. At all times mentioned herein, the Defendants, and each of them, had the duty and obligation to

23  disclose to Plaintiffs and to her physicians, the true facts concerning the Mesh Devices; that is, that said

24  products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal

25  use, and how likely there were to cause serious consequences to users including permanent and debilitating

26  injuries. The Defendants, and each of them, made the affirmative representations as set forth above to

27  Plaintiffs, their physicians, and the general public prior to the date the Mesh Devices were implanted in

28  Plaintiffs, while concealing material facts.

FIRST AMENDED COMPLAINT FOR DAMAGES

59. At all times mentioned in this Complaint, Defendants had the duty and obligation to disclose to Plaintiffs and to Plaintiffs' physicians the true facts concerning the Mesh Device, that it's Mesh Devices were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiffs.

60. At all times herein mentioned, the Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians with the intent to defraud.

61. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representation of safety and efficacy and utilized the Mesh Devices for repairing/correcting pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

62. As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as hereinafter set forth.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### [ Negligent Misrepresentation ]

63. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the pending paragraphs.

64. At all relevant times herein, the Defendants, and each of them, represented to Plaintiffs and their physicians that the Mesh Devices were safe to use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, knowing that the Mesh Devices were defective and capable of causing the injuries described herein.

65. The Defendants, and each of them, made the aforesaid representations with no reasonable ground for believing them to be true when the data readily available to Defendants, and upon information and belief directly available to Defendants in the form of adverse even reports specifically related to the Mesh Devices showed the Mesh Devices to be defective and dangerous when used in the intended manner. Upon information and belief, the misrepresentations were made by Defendants through its statements to the FDA, communications with healthcare providers, in direct-to-consumer advertising, and through sales representatives, with the intention of inducing reliance in the use of the Mesh Device.

-12-

FIRST AMENDED COMPLAINT FOR DAMAGES

66. The aforesaid representation were made to the physicians prescribing the Mesh Devices prior to the date they were prescribed to Plaintiffs with the intent that Plaintiffs and their physicians rely upon such misrepresentations about the safety and efficacy of the Mesh Devices. Plaintiffs and their physicians did reasonably rely upon such representations that the aforesaid product was safe for use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stree urinary incontinence.

67. The representations by the Defendants, and each of them, to Plaintiffs were false, in that the Mesh Device was not safe because it could case serious side effects that were not identified, or were inadequately identified on the product label. As a result, the Mesh Device could and did cause serious injuries to users, including Plaintiffs, of which they were not informed.

68. Defendants' misrepresentations were intended to induce reliance and cause healthcare providers to use and purchase the Mesh Device.

69. In reliance on the misrepresentations by Defendants, Plaintiffs were induced to use the Mesh Device. If Plaintiffs had known of the true facts about the product's possible side effects, Plaintiffs would not have used the Mesh Device. The reliance of plaintiff and her prescribing physicians upon Defendants' misrepresentations was justified because Defendants were in a position to know the true facts about the Mesh Devices possible dangers, and claimed to have disclosed all of the product's potential side effects.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## NINTH CAUSE OF ACTION

### [ Violation of State Consumer Fraud & Deceptive Trade Practices Act ]

70. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the pending paragraphs.

71. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of the Mesh Devices to Plaintiffs.

72. Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading act or practices in violation of all California and Colorado consumer protection laws, identified below. Through its false, untrue and misleading promotions of the Mesh Devices and/or local anesthetic products, Defendants induced Plaintiffs to purchase and/or pay for the purchase of the Mesh Devices. Defendants misrepresented the alleged benefits and characteristics of said products; suppressed, concealed, and failed to

disclose material information concerning known adverse effects; misrepresented the quality as compared to much lower-cost alternatives; misrepresented and advertised that they were of a particular standard quality or grad that they were not; misrepresented in such a matter that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have switched to another product and/or chosen not to purchase and/or reimburse for purchase for the product; advertised with the intent not to sell as advertised; and otherwise engaged in fraudulent and deceptive conduct.

73. As such a matter that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have switched to another product and/or chosen not to purchase and/or reimburse for purchase for the product; advertised with the intent not to sell as advertised; and otherwise engaged in fraudulent and deceptive conduct.

74. Moreover, Defendants knowingly took advantage of Plaintiffs who were reasonably unable to protect their interest due to ignorance of the harmful adverse effects. Defendants' conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to Plaintiffs and offends the public conscience.

75. As a result of and in reliance of Defendants' violative conduct, Plaintiffs purchased and/or paid for purchases of the Mesh Devices that were not made for resale.

76. As such, Defendants engaged in unfair competition or deceptive acts or practices in violation of California Business & Professional Code §17200, et seq., California Business & Professional Code §17500, et seq., and C.R.S. 6-1-105, et seq., among a proximate result of Defendants' misrepresentations and omissions, Plaintiffs have suffered ascertainable losses, in an amount to be determined at trial.

77. As a direct and proximate consequence of Defendants' acts, omissions and misrepresentations described herein, the Plaintiffs have required and will require healthcare and services; have incurred and will continue to incur medical and related expenses; have suffered loss of wages and a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages. Plaintiffs' direct medical losses and costs include care of hospitalization, physician car, monitoring, treatment, medications, and supplies. Plaintiffs will continue to incur such losses in the future.

1      78. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate

2  disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby

3  entitling Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter them from

4  similar conduct in the future.

5      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth, seeking

6  compensatory damages, the imposition of a constructive trust over and restitution of the monies collected

7  and profits realized by the Defendants to cease such false and misleading advertising in the future, and

8  punitive and exemplary damages together with interest, the costs of suit and attorneys' fees and such other

9  and further relief as this court deems just and proper.

10

11

12

13

14  **PRAYER FOR RELIEF**

15      WHEREFORE, Plaintiffs demand judgment against the Defendants on each of the above-referenced

16  claims and Causes of Action and as follows:

17      a.   Awarding compensatory damages to Plaintiffs for past and future damages, including but not

18         limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs,

19         health care costs, medical monitoring, together with interest and costs as provided by law;

20      b.  For lost wages and loss of earning capacity in an amount to be proven at time of trial together with

21        interest thereon at the highest lawful rate from the date of judgment until paid in full;

22      c.  For imposition of a constructive trust and restitution;

23      d.  For punitive or exemplary and/or exemplary damages for the wanton, willful, fraudulent, reckless

24        acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety

25        and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and

26        deter future similar conduct;

27      e.  For any other causes of action and/or claims as may be compensable under local laws and/or statutes

28        as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial'

f. For Plaintiffs' reasonable attorneys' fees;

g. For Plaintiffs' costs incurred herein together with interest thereon at the highest lawful rate from the date of judgment until paid in full; and

h. For such other relief as the Court deems just and proper.

Dated: March 7, 2011

Girardi & Keese

By: _____
Thomas V. Girardi
Amy Fisch Solomon
Amanda Kent

Attorneys for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES

1  **DEMAND FOR JURY TRIAL**

2  Plaintiffs demand a trial by jury on all issues so triable.

3

4  Dated:  March 7, 2011                                    Girardi & Keese

5                                                    By: _____

6                                                        Thomas V. Girardi
                                                         Amy Fisch Solomon
7                                                        Amanda Kent

8                                                        Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

FIRST AMENDED COMPLAINT FOR DAMAGES

GIRARDI | KEESE
THOMAS V. GIRARDI – BAR NO. 36603
AMY FISCH SOLOMON – BAR NO. 140333
AMANDA KENT- BAR NO. 258298
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211
Attorneys For Plaintiffs

FILED
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

MAY 0 5 2011

GARY M. BLAIR, Executive Officer
BY _Terri Chavez_
TERRI CHAVEZ, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SANTA BARBARA

SHERRY HERKAL, an individual, CANDY
WARD, an individual, and LEORA PORTER,
an individual,

        Plaintiffs,

vs.

MENTOR CORPORATION, a California
corporation, and DOE MANUFACTURERS
one through one hundred.

        Defendants.

CASE NO. 1372237

SECOND AMENDED COMPLAINT
FOR DAMAGES AND DEMAND FOR
JURY TRIAL
                    BY "FAX"

1. Strict Products Liability- Failure to
    Warn
2. Strict Liability
3. Negligence
4. Breach of Implied Warranty
5. Breach of Express Warranty
6. Fraud
7. Fraud by Concealment
8. Negligent Misrepresentation
9. Violation of State Consumer Fraud &
    Deceptive Trade Practices Act

COME NOW, plaintiffs complaining of defendants as follows:

PARTIES, JURISDICTION AND VENUE

-1-

SECOND AMENDED COMPLAINT FOR DAMAGES

1.    SHERRY HERKAL, is and was at all times alleged herein, a citizen and resident of Yuba City, California. CANDY WARD, is and was at all times alleged herein, a citizen and resident of Milton, Florida. LEORA PORTER, is and was at all times alleged herein, a citizen and resident of Noblesville, Indiana.

2.    Defendant Mentor Corporation (hereinafter, "MENTOR") is and was a corporation formed under the laws of the State of California, with its principal place of business in California at 201 Mentor Drive, Santa Barbara, California 93111.

3.    At all times alleged herein, MENTOR included and includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

4.    At all times alleged herein, MENTOR conducted regular and sustained business in California by selling and distributing its products in California, as described below.

5.    Upon information and belief, Defendants DOE Manufacturers One through One Hundred are manufacturers, persons, agents, servants, employees, corporations, partnership or other business entities whose true names are unknown by Plaintiff at the present time. Plaintiffs allege, upon information and belief, that DOE Manufacturers ONE through One Hundred are citizens and residents of the State of California, or are domiciled within the State of California, or conduct regular and sustained business within the State of California, to subject them to the jurisdiction of this Court. Each of these Defendants negligently assisted the named Defendants in carrying out the allegations as set forth below. Alternatively, DOE Manufacturers One through One Hundred were agents and/or servants of one or more named defendants, were acting within the course and scope of their employment and/or agency at the times alleged herein. If and when the true identities of such persons, servants, employees, corporations, partnership or other business entities are known to Plaintiff, they will seek leave of Court to amend the Complaint to reflect such true names, together with appropriate charging allegations.

6.    At all times alleged herein, reference to any named Defendant, or use of the collective term "Defendants", includes the named Defendant and Defendants DOE Manufacturers ONE through one

-2-
SECOND AMENDED COMPLAINT FOR DAMAGES

1  hundred, or all named Defendants herein and Defendants DOE Manufacturers ONE through one hundred,
2  respectively.

3      7. At all times alleged herein, Defendants identified herein as, or discovered to be, corporations or other
4  business entities were acting by and through officers, employees, agents, and contractors, who were acting
5  within the course and scope of said office, employment, agency, or contractual authority.

6                    **FACTUAL BACKGROUND**

7  8. Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell
8  products that are sold to and marketed to treat, among other things, pelvic organ prolapse and stress urinary
9  incontinence.

10      10. MENTOR designed, researched, developed, manufactured, tested, marketed, advertised, promoted,
11        distributed, and sold mesh products, the implanted synthetic surgical mesh devices purported to
12        correct and restore normal vaginal structure secondary to pelvic organ prolapse.

13      11. The MENTOR mesh products are collectively referred to herein as the "Mesh Devices."

14      12. Upon information and belief, MENTOR sought and obtained Food and Drug Administration
15  ("FDA") approval to market mess products and/or its monofilament polypropylene mesh component under
16  Section 510(k) of the Medical Device Amendment.

17      13. Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent
18  to other legally marketed predicate devices without formal review for safety or efficacy.

19      14. On or about January, 2007, Plaintiff SHERRY HERKAL underwent transvaginal tape, bladder
20  sling, urethral suspension, and cystocele repair. On or about November, 2006, Plaintiff CANDY WARD
21  underwent transvaginal tape, bladder sling, urethral suspension, and cystocele repair. On or about October,
22  2004, Plaintiff LEORA PORTER underwent transvaginal tape, bladder sling, urethral suspension, and
23  cystocele repair. Since implantation of the Mesh Devices, Plaintiffs have suffered from, among other
24  problems, erosion, shrinkage, and extrusion of mesh from one or more of the Mesh Devices, causing urinary
25  retention, severe persistent pain, including dyspareunia, and numerous surgical procedures to remove the
26  Mesh Devices.

27      15. At all times relevant herein, the Mesh Devices were widely advertised and promoted by Defendants
28  as a safe and effective treatment for pelvic organ prolapse, rectocele, enterocele and stress urinary

1  incontinence. Said Defendants, and each of them, minimized the risks posed to patients with implantation
2  of the Mesh Devices.

3  16. At all times relevant herein, Defendants knew their Mesh Devices were defective and knew the
4  defect was attributable to the erosion, hardening and shrinkage of the mesh material. The Defendants, and
5  each of them, knew that the Mesh Devices were made to allow tissue infiltration and that removal is not
6  advised. Complications from the mesh and from mesh removal are life-changing and can be irreversible.
7  This information was known to the Defendants, and each of them, prior to implantation of the Mesh Devices
8  in Plaintiffs.

9  17. At all times relevant to this action, the Defendants, and each of them, knew that synthetic mesh
10 systems, and specifically the Mesh Devices, were not safe for the patients for whom they were prescribed
11 and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a
12 safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body
13 invasion, dense adhesions, and worsening dyspareunia. Removal of eroded or infected mesh brings a high
14 rate of life-threatening complications including permanent disfigurement and hemorrhage. Complete
15 removal can take multiple surgical interventions in the operating theater and results in scarring on fragile
16 compromised pelvic tissue and muscles. .

17 18. The Defendants' representations regarding the performance of the Mesh Devices, including, but not
18 limited to, the consistency of the performance of the Mesh Devices and their safety and reliability, were
19 untrue as set forth in the published literature and adverse event reports. The Defendants, and each of them,
20 failed to disclose to physicians, patients or Plaintiff that their Mesh Devices were subject to erosion or scar
21 tissue formation causing the injuries herein described.

22 19. At all relevant times herein, Defendants, and each of them, continued to promote the Mesh Devices
23 as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

24 20. In doing so the Defendants, and each of them, concealed the known risks and failed to warn of
25 known or scientifically knowable dangers and risks associated with the Mesh Devices for pelvic organ
26 prolapse, rectocele, enterocele and stress urinary incontinence.

27
28

-4-
SECOND AMENDED COMPLAINT FOR DAMAGES

21. As a result of the defective Mesh Devices, Plaintiffs have suffered severe physical and emotional injuries, including and but limited to, multiple surgical procedures, painful scarring and worsening and continuing dyspareunia.

22. At all relevant times herein, Defendants, and each of them, failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Mesh Devices including, but not limited to, mesh erosion, dense adhesion, worsening dyspareunia, chronic pain, inflection, sepsis, permanent disfigurement and multiple surgeries for mesh removal.

23. The Mesh Devices are designed, manufactured, distributed sold and/or supplied by the Defendants, and each of them, was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants'' knowledge of product failure and serious adverse events.

24. At all times herein mentioned, the officers and/or directors of the Defendants named herein participated in , authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff.

25. Due to the acts of all Defendants individually or in concert, the information regarding the nature and/or the facts leading up to and/or causing the injuries alleged herein was not known by Plaintiffs nor reasonably could have been known prior to October 20, 2008, when the FDA released a public health notification of the serious complications associated with transvaginal placement of surgical mesh devices, for treatment of, *inter alia*, pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

### FIRST CAUSE OF ACTION

#### [ Strict Products Liability – Failure to Warn]

26. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

27. At all times mentioned herein, the Mesh Devices are, and were, dangerous and presented a substantial danger to patients who were implanted with the Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiffs. Ordinary consumer would not have recognized the potential risks and dangers the Mesh Devices posed to pelvic reconstruction patients

SECOND AMENDED COMPLAINT FOR DAMAGES

1  because their uses were specifically promoted to improve the health of such patients. The Mesh Devices

2  were used in a way reasonably foreseeable to the Defendants, and each of them, by Plaintiffs. The

3  Defendants, and each of them, failed to provide warning of such risks and dangers to Plaintiffs and their

4  medical providers as described herein.

5      28. At all times mentioned herein, the Mesh Devices are, and were, dangerous and presented a

6  substantial danger to patients who were implanted with the Mesh Devices, and these risks and dangers were

7  known or knowable at the time of distribution and implantation in Plaintiffs. Ordinary consumers would not

8  have recognized the potential risks and dangers the Mesh Devices posed to pelvic reconstruction patients

9  because their uses were specifically promoted to improve the health of such patients. The Mesh Devices

10  were used in a way reasonably foreseeable to the Defendants, and each of them, by Plaintiffs. The

11  Defendants, and each of the, failed to provide warning of such risks and dangers to Plaintiffs and their

12  medical providers as described herein.

13      29. As a result of the Mesh Devices, Plaintiffs suffered debilitating injuries from the synthetic mesh

14  including mesh erosion, shrinking, hardening, chronic pain and worsening dyspareunia leading to the need

15  for dangerous and serious vaginal surgery; required and will continue to require healthcare and services; has

16  incurred and will continue to incur medical and related expenses; has suffered and will continue to suffer

17  mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, chronic

18  debilitating pain, and other such damages.

19      30. In doing the acts herein described, the Defendants, and each of them, acted with oppression, fraud

20  and malice, and Plaintiffs are therefore entitled to punitive damages to deter the Defendants, and each of

21  them, and others from engaging in similar conduct in the future. Said wrongful conduct was done with

22  advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the

23  Defendants.

24      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

25

26

27

28                        **SECOND CAUSE OF ACTION**

-8-

SECOND AMENDED COMPLAINT FOR DAMAGES

[Strict Liability]

31. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation continued in the preceding paragraphs.

32. The Mesh Devices were manufactured and/or supplied by the Defendants, and each of them, and were placed into the stream of commerce by these Defendants, and each of them, in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the product.

33. Alternatively, the Mesh Devices manufactured and/or supplied by the Defendants, and each of them, were defective in manufacture, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions in that when they were placed into the stream of commerce, they were unreasonably dangerous; they were more dangerous than an ordinary consumer would expect and more dangerous than other forms of pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence repair/correction. As a result of the defective unreasonably dangerous manufacture of the product, the Mesh Devices manufactured and/or supplied by the Defendants, and each of them, Plaintiffs were caused to suffer the herein described injuries and damages.

34. At the time of the plaintiffs' surgery the Mesh Device was being used for the purpose for which it was intended and the way it was intended to be used. After being implanted with the Mesh Device, Plaintiffs used the Mesh Device in a manner for which it was reasonably foreseeable that it would be used. Defendants knew that patients, including plaintiffs, would be subjected to the Mesh Device, its component parts and its labeling and instructions without being able to inspect them or become aware of their defective nature. Plaintiffs did not know and had no reason to suspect or know that the Mesh Device, its component parts or its labeling and instructions were defective and unsafe for use.

35. The Mesh Device, its component parts, its labeling and its instructions were defective at the time of its manufacture, testing, production, inspection, sale and distribution, including lack of warnings or adequate consumer information at the time it was placed in the stream of commerce. The product's instructions and directions for implantation failed to warn of the dangerous propensities of the said product, which risks were known or reasonably scientifically knowable to defendants. The defendants, and each of them, knew or should have known of the defective condition, characteristics and risks associated with said

-7-

SECOND AMENDED COMPLAINT FOR DAMAGES

1    product, as previously set forth herein.

2        36. Defendants, and each of them, acted with conscious and deliberate disregard of the foreseeable

3    harm caused by the Mesh Devices.

4        37. The Defendants, and each of them, thereby acted with fraud, malice, oppression and a conscious

5    disregard for the Plaintiffs' and the general public's safety, who accordingly request that the trier of fact, in

6    the exercise of sound discretion, award additional damages for the sake of example and for the purpose of

7    punishing the Defendants, and each of them, for their conduct, in an amount sufficiently large to be an

8    example to others and to deter the Defendants, and each of them, and others from engaging gin similar

9    conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization,

10   and/or ratification of an officer, director, and/or managing agents of the Defendants.

11       WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

12

13

14

15                               **THIRD CAUSE OF ACTION**

16                                       [ Negligence ]

17   38. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation

18        contained in the preceding paragraphs.

19   39. The Defendants, and each of them, and their representatives were manufacturers and/or distributors

20        of the Mesh Devices. At all times herein, the Defendants, and each of them, had a duty to properly

21        manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply,

22        provide proper warnings and prepare for use and sell the aforesaid products.

23   40. The Defendants, and each of them, so negligently and carelessly manufactured, compounded,

24        tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended,

25        displayed, sold, examined, failed to examine and supplied the aforesaid products, that there were

26        dangerous and unsafe for the use and purpose for which they were intended, that is,

27        repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, in

28        Plaintiffs and others similarly situated. As a result of the carelessness and negligence of the

Defendants, Plaintiffs have the Mesh Devices implanted in the manner intended by the manufacturer, and, as a result, Plaitniffs suffered the injuries and damages described herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### [ Breach of Implied Warranty ]

41. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

42. The Defendants, and each of them, impliedly warranted that their Mesh Devices, which the Defendants, and each of them, designed, manufactured, assembled, promoted and sold to Plaintiffs, were merchantable and fit and safe for ordinary use.  The Defendants, and each of them, further impliedly warranted that their Mesh Devices were fit for the particular purpose of repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, respectively.

43. The Defendants' Mesh Devices were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiffs to severe and permanent injuries.  Therefore, the Defendants, and each of them, breached the implied warranties of merchantability and fitness for a particular purpose when their synthetic mesh systems were sold to Plaintiffs, in that the Mesh Devices are defective and have failed to function as represented and intended.

44. As a result of the Defendants', and each of them, breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiffs have sustained and will continue to sustain the injuries and damages described herein and is, therefore, entitled to compensatory damages.

45. After Plaintiffs were made aware that their injuries were as a result of the Mesh Devices, said Defendants, and each of them, had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTON

### [ Breach of Express Warranty ]

46. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

SECOND AMENDED COMPLAINT FOR DAMAGES

47. The Defendants and each of them, expressly warranted to Plaintiff and/or her authorized agents or sales representatives, in publications, and other communications intended for medical patients, and the general public, that the Mesh Devices were safe, effective, fit and proper for their intended use.

48. Plaintiffs and their physicians reasonably relied upon the skill and judgment of the Defendants, and upon said express warranty, in using the aforesaid Mesh Devices. The warranty and representations were untrue in that the products caused severe injury to Plaintiffs and were unsafe and, therefore, unsuited for the use in which they were intended and caused Plaintiffs to sustain damages and injuries herein alleged.

49. As soon as the true names of the Mesh Devices, and the fact that the warranty and representations were false, were ascertained, said Defendants, and each of the, had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### [ FRAUD]

50. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

51. The Defendants, and each of them, falsely and fraudulently represented to Plaintiffs, their physicians, and to members of the general public that the aforesaid products were safe, effective, reliable, consistent, and better than the other similar pelvic repair procedures when used in the manner intended by the manufacturer. The representations by said Defendants' employees who, upon information and belief, include but are not limited to, Defendants' sales representatives, and marketing representatives, were in fact, false. Defendants made these representations to Plaintiffs, their physicians, and to members of the general public prior to implantation into Plaintiffs. These statements were made via advertisement, brochures, and marketing material. The true facts include, but are not limited to, that the aforesaid products were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiffs.

-10-

52.  When the Defendants, and each of them, made these representations, they were aware that they were false.  The Defendants, and each of them, made said representations with the intent to defraud and deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner herein alleged, that is to use the aforementioned products for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence.

53.  While affirmatively misrepresenting the Mesh Devices' safety, Defendants failed to disclose to Plaintiffs or her health care providers the material information that the Mesh Devices were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiffs.

54.  Defendants either knew that their representations and omissions to Plaintiffs and their healthcare providers were false, or made such representations with a reckless regard for their truth or falsity.

55.  Defendants intended that Plaintiffs and their healthcare providers would rely upon the Company's representations and omissions concerning the safety and effectiveness of the Mesh Devices, and plaintiffs justifiably relied upon Defendants' misrepresentations.

56.  In doing the acts herein alleged, the Defendants, and each of them, acted with oppression, fraud, and malice, and Plaintiffs are, therefore, entitled to punitive damages to deter the Defendants, and each of them, and others form engaging in similar conduct in the future.  Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director, and/or managing agent of Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### [ Fraud by Concealment ]

57.  Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

58.  At all times mentioned herein, the Defendants, and each of them, had the duty and obligation to disclose to Plaintiffs and to her physicians, the true facts concerning the Mesh Devices; that is, that said products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal use, and how likely there were to cause serious consequences to users including permanent and debilitating

SECOND AMENDED COMPLAINT FOR DAMAGES

1   injuries. The Defendants, and each of them, made the affirmative representations as set forth above to

2   Plaintiffs, their physicians, and the general public prior to the date the Mesh Devices were implanted in

3   Plaintiffs, while concealing material facts.

4       59. At all times mentioned in this Complaint, Defendants had the duty and obligation to disclose to

5   Plaintiffs and to Plaintiffs' physicians the true facts concerning the Mesh Device, that it's Mesh Devices

6   were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress

7   urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiffs.

8       60. At all times herein mentioned, the Defendants, and each of them, willfully, and maliciously

9   concealed facts as set forth above from Plaintiffs and their physicians with the intent to defraud. The

10  Defendants, and each of them, falsely and fraudulently represented to Plaintiffs, their physicians, and to

11  members of the general public that the aforesaid products were safe, effective, reliable, consistent, and better

12  than the other similar pelvic repair procedures when used in the manner intended by the manufacturer. The

13  representations by said Defendants' employees who, upon information and belief, include but are not limited

14  to, Defendants' sales representatives, and marketing representatives, were in fact, false. Defendants made

15  these representations to Plaintiffs, their physicians, and to members of the general public prior to

16  implantation into Plaintiffs. These statements were made via advertisement, brochures, and marketing

17  material. The true facts include, but are not limited to, that the aforesaid products were not safe to be used

18  for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and

19  were, in fact, dangerous to the health and body of Plaintiffs.

20      61. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set

21  forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not

22  reasonably relied upon said representation of safety and efficacy and utilized the Mesh Devices for

23  repairing/correcting pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

24      62. As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as

25  hereinafter set forth.

26      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

27                          **EIGHTH CAUSE OF ACTION**

28                          [ Negligent Misrepresentation ]

63. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the pending paragraphs.

64. At all relevant times herein, the Defendants, and each of them, represented to Plaintiffs and their physicians that the Mesh Devices were safe to use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, knowing that the Mesh Devices were defective and capable of causing the injuries described herein.

65. The Defendants, and each of them, made the aforesaid representations with no reasonable ground for believing them to be true when the data readily available to Defendants, and upon information and belief directly available to Defendants in the form of adverse even reports specifically related to the Mesh Devices showed the Mesh Devices to be defective and dangerous when used in the intended manner. Upon information and belief, the misrepresentations were made by Defendants through its statements to the FDA, communications with healthcare providers, in direct-to-consumer advertising, and through sales representatives, with the intention of inducing reliance in the use of the Mesh Device.

66. The aforesaid representation were made, upon information and belief, by employees of defendants including but not limited to sales representatives, to the physicians prescribing the Mesh Devices prior to the date they were prescribed to Plaintiffs with the intent that Plaintiffs and their physicians rely upon such misrepresentations about the safety and efficacy of the Mesh Devices. Plaintiffs and their physicians did reasonably rely upon such representations that the aforesaid product was safe for use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stree urinary incontinence. These representations were made by defendants in marketing material, online advertising, and brochures.

67. The representations by the Defendants, and each of them, to Plaintiffs were false, in that the Mesh Device was not safe because it could case serious side effects that were not identified, or were inadequately identified on the product label. As a result, the Mesh Device could and did cause serious injuries to users, including Plaintiffs, of which they were not informed.

68. Defendants' misrepresentations were intended to induce reliance and cause healthcare providers to use and purchase the Mesh Device.

69. In reliance on the misrepresentations by Defendants, Plaintiffs were induced to use the Mesh Device. If Plaintiffs had known of the true facts about the product's possible side effects, Plaintiffs would not have

-13-

SECOND AMENDED COMPLAINT FOR DAMAGES

1   used the Mesh Device. The reliance of plaintiff and her prescribing physicians upon Defendants'

2   misrepresentations was justified because Defendants were in a position to know the true facts about the

3   Mesh Devices possible dangers, and claimed to have disclosed all of the product's potential side effects.

4       WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

5                          **NINTH CAUSE OF ACTION**

6              **[ Violation of State Consumer Fraud & Deceptive Trade Practices Act ]**

7       70.  Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation

8   contained in the pending paragraphs.

9       71.  Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and

10  promotion of the Mesh Devices to Plaintiffs.

11      72.  Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading act or

12  practices in violation of all California and Colorado consumer protection laws, identified below. Through

13  its false, untrue and misleading promotions of the Mesh Devices and/or local anesthetic products,

14  Defendants induced Plaintiffs to purchase and/or pay for the purchase of the Mesh Devices. Defendants

15  misrepresented the alleged benefits and characteristics of said products; suppressed, concealed, and failed to

16  disclose material information concerning known adverse effects; misrepresented the quality as compared to

17  much lower-cost alternatives;  misrepresented and advertised that they were of a particular standard quality

18  or grad that they were not; misrepresented in such a matter that later, on disclosure of the true facts, there

19  was a likelihood that Plaintiffs would have switched to another product and/or chosen not to purchase and/or

20  reimburse for purchase for the product; advertised with the intent not to sell as advertised; and otherwise

21  engaged in fraudulent and deceptive conduct.

22      73.  As such a matter that later, on disclosure of the true facts, there was a likelihood that Plaintiffs

23  would have switched to another product and/or chosen not to purchase and/or reimburse for purchase for the

24  product; advertised with the intent not to sell as advertised; and otherwise engaged in fraudulent and

25  deceptive conduct.

26      74.  Moreover, Defendants knowingly took advantage of Plaintiffs who were reasonably unable to

27  protect their interest due to ignorance of the harmful adverse effects. Defendants' conduct was willful,

28

                                   -14-

1  outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to
2  Plaintiffs and offends the public conscience.

3      75. As a result of and in reliance of Defendants' violative conduct, Plaintiffs purchased and/or paid for
4  purchases of the Mesh Devices that were not made for resale.

5      76. As such, Defendants engaged in unfair competition or deceptive acts or practices in violation of
6  California Business & Professional Code §17200, et seq., California Business & Professional Code §17500,
7  et seq., and C.R.S. 6-1-105, et seq., among a proximate result of Defendants' misrepresentations and
8  omissions, Plaintiffs have suffered ascertainable losses, in an amount to be determined at trial.

9      77. As a direct and proximate consequence of Defendants' acts, omissions and misrepresentations
10  described herein, the Plaintiffs have required and will require healthcare and services; have incurred and will
11  continue to incur medical and related expenses; have suffered loss of wages and a diminished capacity to
12  earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the
13  enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages.
14  Plaintiffs' direct medical losses and costs include care of hospitalization, physician car, monitoring,
15  treatment, medications, and supplies. Plaintiffs will continue to incur such losses in the future.

16      78. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate
17  disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby
18  entitling Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter them from
19  similar conduct in the future.

20      WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth, seeking
21  compensatory damages, the imposition of a constructive trust over and restitution of the monies collected
22  and profits realized by the Defendants to cease such false and misleading advertising in the future, and
23  punitive and exemplary damages together with interest, the costs of suit and attorneys' fees and such other
24  and further relief as this court deems just and proper.

25
26
27
28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

a. Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

b. For lost wages and loss of earning capacity in an amount to be proven at time of trial together with interest thereon at the highest lawful rate from the date of judgment until paid in full;

c. For imposition of a constructive trust and restitution;

d. For punitive or exemplary and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

e. For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial'

f. For Plaintiffs' reasonable attorneys' fees;

g. For Plaintiffs' costs incurred herein together with interest thereon at the highest lawful rate from the date of judgment until paid in full; and

h. For such other relief as the Court deems just and proper.

Dated: May 4, 2011

Girardi & Keese

By: _____

Thomas V. Girardi
Amy Fisch Solomon
Amanda Kent

Attorneys for Plaintiff

SECOND AMENDED COMPLAINT FOR DAMAGES

1             **DEMAND FOR JURY TRIAL**

2   Plaintiffs demand a trial by jury on all issues so triable.

3

4   Dated: May 4, 2011             Girardi & Keese

5                  By: _____

6                        Thomas V. Girardi
                         Amy Fisch Solomon

7                        Amanda Kent

8                        Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

SECOND AMENDED COMPLAINT FOR DAMAGES